UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN HALL,<br><br>             Plaintiff,<br><br>  -against-<br><br>SAMANTHA REAY, *in her capacity as personal representative of the* ESTATE OF ROBERT M. ADELMAN,<br><br>            Defendant. | Case No: 1:20-cv-02436<br><br>ECF Case<br><br>Jury Trial Demanded |

## DEFENDANT'S ANSWER AND COUNTERCLAIM

Defendant Samantha Reay, in her capacity as personal representative of the Estate of Robert M. Adelman ("Defendant"), by her undersigned counsel, Cowan, DeBaets, Abrahams & Sheppard LLP, hereby answers the complaint of plaintiff Susan Hall ("Plaintiff") in this action, dated March 19, 2020 (Dkt. No. 1) ("Complaint"), as follows:

## NATURE OF THE ACTION

1. Defendant states that the allegations in Paragraph 1 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant denies that Plaintiff holds a joint copyright in any of Mr. Adelman's photographs.

2. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 2 and therefore denies same.

3. Defendant admits the allegations in Paragraph 3.

4. Defendant states that the allegations in Paragraph 4 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant admits that Ms. Hall and Mr. Adelman contributed to six Books, the Books included photographs,

accompanied by captions and text, and that Ms. Hall and Mr. Adelman have copyright registrations in the Books.

5.      Defendant denies the allegations in Paragraph 5, except admits that Mr. Adelman solely took photographs of subjects, and certain of the Books included photographs of subjects that Mr. Adelman had previously photographed before he met Ms. Hall.

6.       Defendant denies the allegations in Paragraph 6, except admits that Mr. Adelman solely took photographs.

7.      Defendant states that the allegations in Paragraph 7 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant states that, except for one book, Prairie House Inc. initially published the Books and Bob Adelman Books, Inc. later entered into one contract to republish and sell one of the Books.

8.      Defendant states that the allegations in Paragraph 8 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant denies the allegations in Paragraph 8, except admits that Mr. Adelman sold his entire archive of photographs and granted the buyer a non-exclusive license to use the photographs for certain archival and non-profit purposes.

9.      Defendant admits the allegations in Paragraph 9.

**JURISDICTION AND VENUE**

10.      Defendant states that the allegations in Paragraph 10 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant admits that this Court has subject matter jurisdiction over federal copyright claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

11.     Defendant states that the allegations in Paragraph 11 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant states that the parties are citizens of different states for jurisdiction purposes.

12.     Defendant states that the allegation in Paragraph 12 contains a conclusion of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 12, and therefore denies same.  Nonetheless, to the extent that Defendant is subject to personal jurisdiction in this District, venue would be proper in this Court.

## PARTIES

13.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13 and therefore denies same.

14.     Defendant admits the allegations in Paragraph 14.

15.     Defendant states that the allegations in Paragraph 15 contain a conclusion of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant admits that Ms. Reay is the personal representative of the Estate of Robert M. Adelman.

## FACTUAL BACKGROUND

16.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 16 and therefore denies same, but states that Mr. Adelman lived in Manhattan, New York, in or around 1969.

17.     Defendant denies the allegations in Paragraph 17, except admits that Ms. Hall and Mr. Adelman were owners of a publishing company that published books.

18.     Defendant denies the allegations in Paragraph 18, except admits that Mr. Adelman photographed certain subjects in Manhattan, New York.

19.     Defendant admits that Plaintiff and Mr. Adelman published *On and Off the Street* in 1970 and states that the book and the copyright registration referenced therein speak for themselves and denies any misrepresentations or mischaracterizations of same.

20.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 20 and therefore denies same, except admits that Mr. Adelman photographed subjects of the book.

21.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21 and therefore denies same, except admits that Mr. Adelman photographed subjects in Manhattan, New York.

22.     Defendant denies the allegations in Paragraph 22, except admits that Prairie House Inc. published the book in 1972 and states that the book and the copyright registration referenced therein speak for themselves and denies any misrepresentations or mischaracterizations of same.

23.     Defendant admits the allegations in Paragraph 23.

24.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24 and therefore denies same, except admits that Mr. Adelman traveled to Alabama.

25.      Defendant denies the allegations in Paragraph 25, except admits that Prairie House Inc. published the book in 1972 and states that the book and the copyright registration referenced therein speak for themselves and denies any misrepresentations or mischaracterizations of same.

26.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 26 and therefore denies same.

27.     Defendant states that the copyright page referenced in Paragraph 27 speaks for itself and denies any misrepresentations or mischaracterizations of same, except admits that the

copyright page states that the photographs were "Photographed by Bob Adelman" and that the copyright in the book is identified as "Susan Hall & Bob Adelman."

28.     Defendant denies the allegations in Paragraph 28, except admits that Prairie House Inc. published the book in 1972 and states that the book and the copyright registration referenced therein speak for themselves and denies any misrepresentations or mischaracterizations of same.

29.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 29 and therefore denies same, except admits that Mr. Adelman photographed subjects in Manhattan, New York.

30.     Defendant states that the copyright page referenced in Paragraph 30 speaks for itself and denies any misrepresentations or mischaracterizations of same, except admits that the copyright page states that the photographs were "Photographed by Bob Adelman" and that the copyright in the book is identified as "Bob Adelman & Susan Hall."

31.     Defendant denies the allegations in Paragraph 31, except admits that Prairie House Inc. published the book in 1973 and states that the book and the copyright registration referenced therein speak for themselves and denies any misrepresentations or mischaracterizations of same.

32.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32 and therefore denies same, except admits that Mr. Adelman took photographs in Manhattan, New York.

33.     Defendant denies the allegations in Paragraph 33, except admits that Prairie House Inc. published the book in 1976 and states that the book and the copyright registration referenced therein speak for themselves and denies any misrepresentations or mischaracterizations of same.

34.    Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 34 and therefore denies same, except admits that Mr. Adelman took photographs.

35.    Defendant states that the copyright page referenced in Paragraph 35 speaks for itself and denies any misrepresentations or mischaracterizations of same, except admits that the copyright page states that the book is "By Bob Adelman & Susan Hall" and that the copyright in the book is identified as "Bob Adelman, Susan Hall & Wilver D. Stargell."

36.    Defendant denies the allegations in Paragraph 36, except admits that Mr. Adelman took photographs for various purposes, and some of the photographs were eventually published in the Books.  Defendant also states that Plaintiff was not present at any photography sessions in 1965, 1966, or 1968, when the photographs that appear in *Down Home* were taken by Adelman. Defendant further states that Plaintiff could not have suggested the setting of a pecan tree in front of a courthouse in Alabama, as Adelman took this photograph in 1966 before he met Plaintiff.

37.    Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 37 and therefore denies same, except states that the article speaks for itself and denies any misrepresentations or mischaracterizations of same.

38.    Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38 and therefore denies same, and states that Defendant did not deposit Mr. Adelman's prints in the Library of Congress.

39.    Defendant admits the allegations in Paragraph 39, except states that the non-exclusive license granted to the Buyer was for limited purposes, such as archival and non-profit uses.

40.     Defendant states that the allegations contained in Paragraph 40 are conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant states that Mr. Adelman was not required to account to Ms. Hall for the transaction.

41.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 41 and therefore denies same.

42.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 42 and therefore denies same.

43.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 43 and therefore denies same, except states that the press release speaks for itself and denies any misrepresentations or mischaracterizations of same.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment of Joint Copyright in the Photographs)**

44.     Defendant restates and incorporates by reference each response to the allegations in Paragraphs 1 through 43 of the Complaint as if fully set forth herein.

45.     Defendant states that the allegations contained in Paragraph 45 are conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant states that the Complaint speaks for itself.

46.     Defendant states that the allegations in Paragraph 46 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant admits the allegations.

47.     Defendant states that the allegations in Paragraph 47 contain conclusions of law as to which no responsive pleading is necessary.

48.     Defendant states that the allegations in Paragraph 48 contain conclusions of law as to which no responsive pleading is necessary.

49.     Defendant states that the allegations in Paragraph 49 contain conclusions of law as to which no responsive pleading is necessary.

50.     Defendant states that the allegations in Paragraph 50 contain conclusions of law as to which no responsive pleading is necessary, except states that 17 U.S.C. § 101 speaks for itself.

51.     Defendant states that the allegations in Paragraph 51 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant denies the allegations.

52.     Defendant states that the allegations in Paragraph 52 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant denies the allegations.

53.     Defendant states that the allegations in Paragraph 53 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant denies the allegations.

54.     Defendant states that the allegations in Paragraph 54 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant denies the allegations.

**SECOND CLAIM FOR RELIEF**
**(Accounting of Profits from Photographs)**

55.     Defendant restates and incorporates by reference each response to the allegations in Paragraphs 1 through 54 of the Complaint as if fully set forth herein.

56.     Defendant states that the allegations contained in Paragraph 56 are conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant states that the Complaint speaks for itself.

57.     Defendant states that the allegations in Paragraph 57 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant denies the allegations.

58.     Defendant states that the allegations in Paragraph 58 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant denies the allegations.

59.     Defendant states that the allegations in Paragraph 59 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant denies the allegations, except admits that Mr. Adelman granted the Buyer of his physical print archive a non-exclusive, royalty-free license for certain limited uses, such as for archival and non-profit purposes.

60.     Defendant states that the allegations in Paragraph 60 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant denies the allegations.

61.     Defendant states that the allegations in Paragraph 61 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant denies the allegations, and states that Mr. Adelman received less than $3,000,000 in profits from the Transaction.

62.     Defendant states that the allegations in Paragraph 62 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, Defendant states that the Complaint speaks for itself.

## PRAYER FOR RELIEF

No responsive pleading is required in connection with Plaintiff's Prayer for Relief, but Defendant states that Plaintiff is not entitled to any of the relief set forth therein.

## AFFIRMATIVE DEFENSES

Defendant makes the following allegations as affirmative defenses against the claims asserted against it without admitting that it bears the burden of persuasion or presentation of evidence on each or any of these matters, and without waiving the right to assert and rely upon other defenses that become available or appear during the course of this action.

### FIRST AFFIRMATIVE DEFENSE

The Complaint and each cause of action alleged therein fail to state any claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

One or more of Plaintiff's purported claims for relief are barred by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's purported claims for relief are barred in whole or in part by the doctrine of laches.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's purported claims for relief are barred in whole or in part by the doctrine of acquiescence.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's purported claims for relief are barred in whole or in part by the doctrine of equitable estoppel.

SIXTH AFFIRMATIVE DEFENSE

Plaintiff's purported claims for relief are barred in whole or in part by the doctrine of waiver, express or implied.

SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's purported claims for relief are barred because Robert M. Adelman solely authored the photographs at issue and did not intend for the photographs to published only in the Books at the time of creation.

EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's purported claims for relief are barred because many photographs were preexisting before publication of the Books, and their later inclusion in the Books created derivative works.

NINTH AFFIRMATIVE DEFENSE

Plaintiff's purported claims for relief are barred because, upon information and belief, Plaintiff is not the proper party to bring any such claims because she assigned or otherwise transferred her copyright in the Books.

TENTH AFFIRMATIVE DEFENSE

Plaintiff's purported claims for relief are barred in whole or in part by the doctrine of unclean hands because, upon information and belief, Hall transferred her copyright in the Books and now claims to have clawed it back, and, as described below, Hall has copied and reproduced certain of Adelman's photographs without authorization on her website, and in electronic books

or "e-books" made available for sale on Amazon.com, with false copyright management information in violation of 17 U.S.C. § 1202.

ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's purported claims for relief are barred because, to the extent Plaintiff did not validly transfer her copyright, Plaintiff abandoned her copyright in the Books.

TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claim for an accounting of all income received in relation to the sale of Adelman's physical print archive is barred, in whole or in part, by the first sale doctrine.

Defendant reserves the right to assert additional defenses as discovery in this case progresses.

**COUNTERCLAIM**

Samantha Reay ("Reay"), in her capacity as personal representative of the Estate of Robert M. Adelman ("Defendant" or the "Estate"), hereby asserts her Counterclaim against Susan Hall ("Plaintiff" or "Hall") and states as follows:

1.      The Estate hereby incorporates and adopts its Answers to the Complaint (Paragraphs 1–62) and Affirmative Defenses as set forth above.

**INTRODUCTION**

2.      This case involves a copyright ownership dispute that has lagged on for decades between Robert M. Adelman ("Adelman"), the renowned civil rights photographer, and Hall, a former collaborator who worked with Adelman for a period of a few years during his nearly 50-year career.

3.      After Adelman made a name for himself as a freelance photographer for civil rights organizations in the 1960s, photographing leaders of the movement and documenting racial strife in the Southern U.S., Adelman returned to New York where he met Hall.

4.      Adelman and Hall decided to collaborate and, around 1971, formed a publishing company, Prairie House Inc., which published several books of photographs from Adelman's collection.  For each book, Adelman provided all of the photographs, many of which he had previously taken, and Hall edited the text of the books, taking an editing credit.

5.      The publishing company later fell on hard times and dissolved, and Adelman and Hall went their separate ways.

6.      It was not until around 1996 that Hall began to demand money from Adelman, for her share of the revenues from exploitation of the copyright in the books.  But Hall did not assert joint copyright ownership only in the books published by Prairie House Inc.—her demands extended to Adelman's individual photographs.

7.      Hall continued to assert joint ownership in Adelman's photographs, and demand payment from Adelman, for two decades leading up to Adelman's death in 2016.

8.      After his passing, Hall intervened *pro se* in the probate proceeding and reiterated her monetary demands, claiming that she was entitled to hundreds of thousands of dollars.  Hall stalled the probate proceeding, filing motion after motion, and is currently preventing the Florida court from closing the administration of the Estate.

9.      Hall then filed this action, seeking extraordinary relief in the form of a declaratory judgment of joint copyright ownership in Adelman's photographs and an accounting of profits Adelman received from his sale, licensing, reproduction, and distribution of the photographs.

10.     In her Complaint, Hall is specifically seeking an unprecedented accounting of the profits Adelman received from the sale of his entire archive of physical prints, which encompasses all the photographs, including the negatives and slides, that Adelman took over his nearly 50-year career.

## THE PARTIES

11.     Reay, in her capacity as personal representative of the Estate, is a citizen of Florida, the state of the decedent, pursuant to 28 U.S.C. § 1332(c)(2).

12.     Upon information and belief, Hall is a citizen and resident of New York with an address of 115 East 34th Street, New York, New York 10156.

## JURISDICTION AND VENUE

13.     This Court has original jurisdiction over this Counterclaim pursuant to 28 U.S.C. §§ 1331 and 1338(a).

14.     Moreover, this Court has subject matter jurisdiction over the Counterclaim under 28 U.S.C. § 1367(a) because they are so related to the claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

15.     This Court has personal jurisdiction over Hall and venue is proper in this District because Hall is a resident of this District and a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## FACTUAL BACKGROUND

A.     **Adelman's Photography Career**

16.     Robert M. Adelman was a famed photographer who, over his nearly 50-year career, captured iconic images of the civil rights movement, and took portraits of notable subjects from Andy Warhol to Tom Wolfe.

17.     Adelman first made a name for himself in the 1960s as a freelance photographer for civil rights organizations.  During this time, he photographed Rev. Dr. Martin Luther King. Jr. delivering his "I Have a Dream" speech in Washington D.C. in 1963, and captured dramatic moments from protests and political events in the Southern U.S., such as the 54-mile march from Selma to Montgomery, Alabama, in 1965.

18.     In addition to his photographs documenting racial strike, segregation, and civil unrest in the South, Adelman, over the next decade, also photographed a variety of social and political events—from democratic conventions, to anti-war demonstrations, to the Women's Strike for Equality.

19.     Adelman, who was born and raised in New York, also developed friendships with artists and writers and began taking portrait photographs of prominent subjects including Andy Warhol, Roy Lichtenstein, Samuel Beckett, and Tom Wolfe, among others.

20.     At certain points during his illustrious career, Adelman worked with collaborators, in creating ideas for stories or books, but never shared any copyright in his photographs that accompanied any article or story.

21.     One such collaborator was Hall, who Adelman worked with for a few years in the 1970s.

**B.     The Books**

22.     In 1970, Adelman and Hall published a book of photographs that Adelman had taken entitled *On and Off the Street*.

23.     In or around 1971, Adelman and Hall formed a publishing company, Prairie House Inc. ("Prairie House"), which published five additional books of Adelman's photographs: *Down Home* (1972), *Gentlemen of Leisure*, *A Year in the Life of a Pimp* (1972), *Street Smart* (1972),

*Ladies of the Night: Streetwalking, Madames, Massaging, Call Girls, Tricks, Partying, Hookers* (1973), and *Out of Left Field: Willie Stargell and the Pittsburgh Pirates* (1976) (collectively, with *On and Off the Street*, the "Books").

24.     Several of the Books included photographs that Adelman had previously taken of subjects that interested him.

25.     For example, Adelman captured many of the photographs that were included in *Down Home* during photography sessions in 1965, 1966, and 1968, before he met Hall.

26.     Similarly, Adelman took the photographs that were included in *Street Smart* during a prior project for a separate publisher.

27.     As clearly set out in the cover and title pages of each of the Books, Hall contributed by editing the text of the Books and providing captions and context to describe the photographs, while Adelman provided all of the photographs for the Books.

28.     Many of the images Adelman provided were from his collection of preexisting photographs that he had previously taken.  For other images, Hall and Adelman collaborated on the subject, but it was Adelman, and Adelman alone, who authored the photographs.  As was his practice, Adelman solely posed the subjects, composed the photographs, selected the camera, film, lighting, and exposure, and captured each image.

29.     Additionally, after photography sessions, Adelman often stamped his name on the individual slides, indicating his sole authorship of the photographs.

30.     Though Hall interviewed subjects, in order provide and edit the text for the books, Hall did not make any of the creative choices that photographers typically makes in authoring a photograph or contributing to the creation of the photographs, such as selection of camera, film,

composition, pose, lighting, and angle, and ultimate editing of the film and selection of the publishable shots.

31.     Adelman and Hall, though Prairie House, filed copyright registrations for each of the Books that covered the selection and arrangement of the contents in the Books.

32.     Prairie House only stayed in business for a short time during the publication of the Books, but experienced financial issues and had trouble generating revenue.

33.     The Books were not financially successful, and after the limited print runs sold off, Prairie House did not seek to reprint the Books.

34.     Adelman's mother-in-law provided funds to help keep the publishing company afloat and loaned at least $40,000 to Prairie House.

35.     Adelman and Hall later dissolved Prairie House in or around 1976, after Hall married, and Adelman and Hall went their separate ways.

36.     The loan to Adelman's mother-in-law was never repaid.

37.     Adelman later transferred his rights in the Books to Bob Adelman Books, Inc.

**C.     Hall's Demands for Monies**

38.     In 1996, Hall unexpectedly filed a complaint in small claims court in New York, seeking payment of $3,000.00 for Adelman's use of three of his photographs, which we previously included in *Gentleman of Leisure*, for a different project.

39.     The New York City civil court dismissed Hall's complaint outright on the ground that it was essentially an action arising under copyright law, and as such, the court did not have jurisdiction to adjudicate the claims.

40.     Though the civil court dismissed Hall's complaint without prejudice to Hall's right to commence an action in a proper forum, Hall did not do so until this litigation, in 2020.

41.     In the early 2000s, after Adelman had moved to Florida, Hall, in a series of letters, faxes, and emails, again demanded monies from Adelman based on her assertion she was the joint copyright owner in the individual photographs that Adelman took that were included the Books, which Adelman always denied.

42.     In one such letter dated May 19, 2004, Hall claimed that she had arranged for republication of two of the Books, *Gentleman of Leisure* and *Ladies of the Night*, and demanded that Adelman provide prints of all photographs in both publications.

43.     Adelman never conceded that Hall had any rights to his photographs.

44.     It is unclear if anything ever came from Hall's claim of republication.

45.     In November 2005, Bob Adelman Books, Inc. entered into a publishing agreement with powerhouse Cultural Entertainment, Inc. ("powerhouse") to publish a reproduction of *Gentleman of Leisure*.

46.     In and around July 2006, Hall sought to interfere in the republication of *Gentleman of Leisure* and made a series of threats to Adelman, powerhouse, and the book sellers, including Barnes & Noble, causing the parties to incur substantial attorneys' fees.

47.     To informally resolve this dispute, and allow the publication of the republication of the book to go forward without issue, Adelman agreed to pay Hall a lump sum in consideration for Hall assigning her copyrights in the Books to her son, David Hall Leavitt ("Leavitt"), who could act as an intermediary.

48.     Upon information and belief, Hall, in 2006, executed and signed a written agreement assigning all right, title, and interest in the Books to Leavitt.

49.     Shortly thereafter, Leavitt withdrew all complaints previously made by Hall.

50.     Ultimately, the republication of *Gentleman of Leisure* was not financially successful, and only around 1,500 copies of the reprint were sold.

**D.     Adelman's Sale of His Print Archive**

51.     In June 2011, Adelman sold the entirety of his physical photographic archive to a private buyer, including his fine art prints, publication prints, negatives, slides, films, physical books, and other ephemera.

52.     Hall's son Leavitt, who Adelman had known for years and was now a practicing lawyer, assisted with the transaction.

53.     This sale did not include any transfer of copyright; however, as part of the transaction, Adelman granted the buyer a non-exclusive, royalty-free license to reproduce the images contained in the archive for certain limited purposes, such as archival purposes, use by non-profit organizations, and publicity images in connection with exhibitions of the prints.

54.     In November 2013, Adelman received a demand letter from James Mitchell, one of the subjects of *Gentleman of Leisure*.  In that letter, Mitchell demanded that Adelman account for all revenues derived from the sale of rights in *Gentleman of Leisure*, including the sale of Adelman's archive.  The letter stated that Mitchell and his representative had discovered the sale of archives by "personal discovery."

55.     Upon information and belief, Hall also had constructive knowledge of the 2011 sale of Adelman's entire archive around this time, as Mitchell's letter contained specific information that could have only come from Hall or her son, who was involved in the sale, and Hall likely was in contact with Mitchell at the time.

**E.     The Probate Proceeding and Hall's Unauthorized Conduct**

56.     Adelman passed away on March 19, 2016.

57.     Following Adelman's death, his daughter, Reay, commenced a probate proceeding in Florida on March 30, 2016 to set up and administer the Estate (the "Probate Proceeding").

58.     During the Probate Proceeding, Hall intervened *pro se* and filed several untimely motions to stall the administration of the Estate, demanding hundreds of thousands of dollars from the Estate, claiming that she owned the copyright in Adelman's photographs, and demanding an accounting of the profits Adelman reaped from the sales and licensing of his photographs.

59.     In one such motion, Hall conceded that her claims arise under the Copyright Act and are within the exclusive jurisdiction of federal courts.

60.     Still, Hall delayed several years in commencing this action in federal court, and instead continued to file various motions in the Probate Proceeding, oftentimes after the deadline for submission, forcing the Estate to expend countless costs in opposing Hall's baseless motions.

61.     Additionally, unbeknownst to the Estate until recently, Hall, shortly after Adelman's death, posted certain of Adelman's individual photographs on her WordPress website, located at https://susanhallbooks.wordpress.com (the "Website").   In the posts on her Website, alongside the photographs, Hall represented that she owned the rights to the photographs, and advertised that individual prints were available for sale.

62.     One of the photographs that Hall posted on her Website at this time was Adelman's iconic photograph of Rev. Martin Luther King Jr. from his "I Have a Dream" speech in Washington, D.C. in 1963.   Though Hall falsely indicated that the photograph was included in *Down Home*, the photograph was not included in any of the Books.

63.     As the Estate further recently discovered, Hall has also made three of the Books available for sale and download through Amazon.com as electronic books or e-books, and has

created an unauthorized derivative version of one of the Books and offered it for sale and download as an e-book on Amazon.com (collectively, the "E-Books," and each, individually, an "E-Book").[1]

64.     In two of the Amazon listings, for *Gentleman of Leisure* and *Ladies of the Night*, Hall falsely indicates that she is the sole author of the publications.  Additionally, on the title and copyright pages of these two E-Books, Hall falsely states that she is the sole author, copyright owner, and owner of all licensing and reproduction rights in the publications.

65.     For the third E-Book, *On and Off the Street*, the title page states that Hall is the sole author, but indicate that the E-Book features "Photographs by Bob Adelman and Susan Hall."  The copyright page for this E-Book states that Hall is the copyright owner and holds all rights in the book.

66.     For the fourth E-Book, an unauthorized derivative version of *Gentleman of Leisure* entitled *Love in the Extremes*, Hall used at least nine of Adelman's photographs in the E-Book without authorization and without attributing the photographs to Adelman as either the author or copyright owner.  Instead, Hall falsely lists herself as the sole author, and identifies "Generation Trust" as the copyright owner.

67.     Upon information and belief, Generation Trust is not a valid entity operating under the laws of any state, but is merely a name that Hall created, as Generation Trust bears the same mailing address as Hall.

68.     Upon information and belief, Hall has received profits from the sales and downloads of these E-Books.

---

[1] *See Susan Hall*, Amazon.com, https://www.amazon.com/Susan-Hall/e/B001IQZDGQ (last visited April 20, 2020).

69.     Unable to address the question of copyright ownership, the Florida probate court ordered the petitioner, Reay, to complete administration of the Estate within a reasonable time, and submit proposed orders by February 22, 2020 or risk the Probate Proceeding being dismissed for lack of prosecution.

70.     Reay timely filed a petition for distribution, petition for discharge, and an amended inventory of items in the trust, along with the proposed orders directed by the Florida court, on February 20, 2020.

71.     Hall then filed this Complaint seeking broad and unsubstantiated relief in the form of a declaratory judgment of joint copyright ownership in Adelman's photographs and an accounting for all profits Adelman reaped from his exploitation of the copyright in his photographs.

72.     Hall also sought to further delay and prevent the timely closure of the Probate Proceeding by filing an objection to Reay's petitions in the Florida probate court on March 23, 2020, more than a month after the court's deadline for filings.

73.     Though Hall never contributed to the authorship of the photographs or paid any expenses for the storage, maintenance, or digitizing of Adelman's photographs, she now seeks to derive a substantial monetary benefit from the sales and licensing of Adelman's individual prints.

74.     Hall also seeks a share of the profits from Adelman's 2011 sale of his life's work—his entire archive of at least 50,744 prints, including tens of thousands of photographs that Adelman took before he ever met Hall and photographs that he captured after their business collaboration dissolved.

75.     For these reasons, and to enable the closure of the Probate Proceeding, the Estate submits this Counterclaim.

## FIRST COUNTERCLAIM
### (Declaratory Judgment Regarding the Individual Photographs)

76.     The Estate incorporates and restates by reference the allegations contained in each of the preceding paragraphs of the Counterclaim as if fully set forth herein.

77.     The Estate seeks a declaratory judgment that Hall does not own a joint copyright interest in the individual photographs taken by Adelman, separate from their inclusion in the Books.

78.     An actual, justiciable controversy exists between the parties as to whether Hall has a copyright interest in the photographs.

79.     This controversy would exist even if Hall had not filed her Complaint, because Hall has used this purported copyright interest to prevent the timely closure of the Probate Proceeding, and the Florida probate court cannot adjudicate this question of federal law.

80.     As the photographs were created before the effective date of the Copyright Act of 1976, the Copyright Act of 1909, and accompanying case law, govern.

81.     As described above, the Books contain photographs created by Adelman and text edited by Hall.

82.     Upon information and believe, Hall created text specifically for the Books with the intention that it would be embodied in a single work.

83.     Adelman, however, did not have the same intention as Hall.  Upon information, and belief, Adelman did not intend, at the time of creation, for his photographs to serve solely as a contribution to a single work, such as a book, as required for joint authorship; he instead intended, at the time of creation, to create a specific photograph, one moment at a time.

84.     As was his practice, Adelman solely authored the photographs by posing the subjects, composing the images, selecting the camera, film, lighting, and exposure, and capturing each photograph.

85.     Hall did not contribute to or otherwise author any of Adelman's photographs.

86.     Adelman also, after photography sessions, often stamped his name on the photographic slides, further evidencing his sole authorship of his photographs.

87.     Each of Adelman's photographs constitutes a separate work of authorship and each photograph could be used for many purposes over the term of the copyright, including as part of a later composite work or reproduced, displayed, and distributed individually.

88.     When Adelman later contributed certain of his photographs for inclusion in the Books, he was exercising one of his exclusive rights to use his preexisting works—many of which he created before he met Hall—to contribute to a new, derivative work.

89.     Adelman's sole authorship of the underlying photographs does not confer any rights upon Hall, who contributed no creative authorship to the individual photographs.

90.     Hall's rights extend only to the new copyrightable content in the Books—namely, the text and the selection, coordination, and arrangement of content within the Books.

91.     Accordingly, the Estate is entitled to a declaratory judgment that Hall does not hold a joint copyright interest in Adelman's individual photographs.

**SECOND COUNTERCLAIM**
**(Violation of 17 U.S.C. § 1202(a))**

92.     The Estate incorporates and restates by reference the allegations contained in each of the preceding paragraphs of the Counterclaim as if fully set forth herein.

93.     Hall, without authorization, copied and published several of Adelman's individual photographs on her website, accompanied by false copyright management information.

24

94.     In one instance, Hall copied Adelman's iconic photograph of Rev. Martin Luther King. Jr. delivering his "I Have a Dream" speech (the "MLK Photograph") and published it on her Website.

95.     Alongside the MLK Photograph, Hall falsely indicated that this photograph was included in the Book *Down Home* and that she owned the rights to this photograph.

96.     The name of the copyright owner of a work constitutes "copyright management information" pursuant to 17 U.S.C. § 1202(c)(3).

97.     Hall provided false copyright management information on her Website by claiming that she owned the rights to the MLK Photograph.

98.     Upon information and belief, Hall provided this false copyright management information with knowledge that it was false because she did not author the MLK Photograph. Indeed, it is undisputed that Hall did not even know Adelman at the time he captured the MLK Photograph in 1963.

99.     Additionally, Hall copied and published several individual photographs that Adelman took of subjects of *Gentleman of Leisure* on her Website and, alongside the images, provided false copyright management information by indicating that she owned the rights in these photographs.

100.    Upon information and belief, Hall provided this false copyright management information with knowledge that it was false because, as detailed above, she did not author these photographs and does not hold a copyright interest in the individual photographs outside of the Book.

101.    Upon information and belief, Hall provided false copyright management information in these instances with the intent to induce, enable, facilitate, or conceal her infringement.

102.    Hall's aforementioned conduct constitutes a violation of 17 U.S.C. § 1202(a).

103.    As a result of Hall's wrongful conduct as alleged herein, the Estate, as the holder of Adelman's copyright in his photographs, is entitled to recover from Hall the damages that it sustained and will sustain, and any gains, profits, and advantages obtained by Hall due to her violation of 17 U.S.C. § 1202(a), including attorneys' fees and costs.

104.    Alternatively, the Estate may elect to recover from Hall statutory damages pursuant to 17 U.S.C. § 1203(c)(3), ranging from $2,500 to $25,000 for each violation of 17 U.S.C. § 1202(a).

## THIRD COUNTERCLAIM
### (Violation of 17 U.S.C. § 1202(b))

105.    The Estate incorporates and restates by reference the allegations contained in each of the preceding paragraphs of the Counterclaim as if fully set forth herein.

106.    Hall does not dispute that Adelman co-authored and holds a copyright in each of the Books.

107.    Indeed, Hall, in her Complaint, recites the title and copyright pages for each of the Books, and identifies the copyright registrations that Adelman and Hall filed copyright registrations for each of the Books.

108.    Despite this, Hall, without notifying or accounting to the Estate, has made three of the Books available for sale, download, and distribution through Amazon.com as E-Books.

109.    In two of the Amazon listings for *Gentleman of Leisure* and *Ladies of the Night* Hall indicates in the listings that she is the sole author of the publications.

110.    Moreover, on the title and copyright pages of these two E-Books, as visible on Amazon, Hall falsely states that she is the sole author, copyright owner, and owner of all licensing and reproduction rights in the publications.

111.    For the third E-Book, *On and Off the Street*, the title page states that Hall is the sole author, but indicates that the E-Book features "Photographs by Bob Adelman and Susan Hall." The copyright page for this E-Book states that Hall is the copyright owner and holds all rights in the book.

112.    Additionally, Hall created and distributed a fourth E-Book—a derivative work of *Gentleman of Leisure*—entitled *Love in the Extreme*, which included nine of Adelman's photographs.

113.    Hall included Adelman's photographs in the E-Book without authorization or proper attribution.

114.    Instead, for this E-Book, Hall listed herself as the sole author, and identified "Generation Trust" as the copyright owner.

115.    Upon information and belief, Generation Trust is a not a valid entity operating under the laws of any state, but is merely a name created by Hall.

116.    The address listed for Generation Trust in *Love in the Extreme* is the same as Hall's address.

117.    The name of the author of a work as well as the name of the copyright owner of a work both constitute "copyright management information" pursuant to 17 U.S.C. § 1202(c).

118.    By removing Adelman's name from the title and copyright pages of the E-Books, and altering same to indicate that she is the sole author and copyright owner, Hall removed and altered the copyright management information for the Books.

119.    Upon information and belief, Hall intentionally removed and altered the copyright management information without the authorization of the Estate because she was fully aware and has readily acknowledged that Adelman is an author and copyright owner of the Books, yet Hall still choose to remove and alter the copyright management information in the E-Books following Adelman's death.

120.    Moreover, upon information and belief, Hall has sought to distribute and distributed the E-Books containing the false copyright management information with knowledge that the copyright management information had been removed and altered without authorization of the Estate.

121.    Upon information and belief, Hall removed and altered the copyright management information in each of these instances while having reasonable grounds to know that her conduct will induce, enable, facilitate, or conceal her infringement.

122.    Hall's aforementioned conduct constitutes a violation of 17 U.S.C. § 1202(b).

123.    As a result of Hall's wrongful conduct as alleged herein, the Estate, as the holder of Adelman's copyright in his photographs, is entitled to recover from Hall the damages that it sustained and will sustain, and any gains, profits, and advantages obtained by Hall due to her violation of 17 U.S.C. § 1202(b), including attorneys' fees and costs.

124.    Alternatively, the Estate may elect to recover from Hall statutory damages pursuant to 17 U.S.C. § 1203(c)(3), ranging from $2,500 to $25,000 for each violation of 17 U.S.C. § 1202(b).

### FOURTH COUNTERCLAIM
**(Accounting)**

125.    The Estate incorporates and restates by reference the allegations contained in each of the preceding paragraphs of the Counterclaim as if fully set forth herein.

28

126.   Hall does not dispute that she is a co-author and joint owner of the copyright in the Books.

127.   As a result of this joint ownership, Hall has a duty to account to Adelman for the profits she generates pursuant to her co-ownership of the copyright in the Books.

128.   Hall has made three of the Books available for sale and download on Amazon.com as E-Books without notice or accounting to the Estate.

129.   Hall has also created an unauthorized derivative version of one of the Books, entitled *Love in the Extremes*, which includes nine of Adelman's photographs from the Book, and made it available for sale and download on Amazon.com without notice or accounting to the Estate.

130.   Upon information and belief, Hall has received profits from these E-Books, but has not provided an accounting of her profits to the Estate, as the holder of Adelman's copyright interest in the Books.

131.   The Estate seeks judgment ordering Hall to account for all profits received in connection with the E-Books.

## JURY DEMAND

132.   Defendant hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Defendant respectfully requests that this Court enter judgment in its favor and against Plaintiff, as follows:

1.   Denying all relief sought by Plaintiff in the Complaint;

2.   Dismissing the Complaint in its entirety with prejudice;

3.   Finding that Plaintiff is not entitled to damages;

4.    Declaring that Plaintiff is not the joint copyright owner of Robert M. Adelman's photographs;

5.    Finding that Plaintiff has falsified, removed, and/or altered copyright management information in violation of 17 U.S.C. § 1202;

6.    Ordering that Hall account for all profits received in connection with the E-Books;

7.    Awarding Defendant damages pursuant to 17 U.S.C. § 1203;

8.    Awarding Defendant her costs, including reasonable attorneys' fees in accordance with 17 U.S.C. § 505 and § 1203(5); and

9.    Granting all such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       May 19, 2020

                        COWAN, DEBAETS, ABRAHAMS
                          & SHEPPARD LLP

                        By: ____/s/ Nancy E. Wolff_____
                            Nancy E. Wolff
                            Sara Gates
                            41 Madison Avenue, 38th Floor
                            New York, New York 10010
                            Tel.: (212) 974-7474
                            Fax: (212) 974-8474
                            nwolff@cdas.com
                            sgates@cdas.com

                            *Attorneys for Defendant Samantha Reay,*
                            *in her capacity as personal representative*
                            *of the Estate of Robert M. Adelman*